THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v. JOHN DE PAOLA, DEFENDANT-APPELLANT.

Argued May 8, 1950—Decided May 29, 1950.

(1)

4

*Mr. John E. Toolan* argued the cause for appellant.

*Mr. Donald G. Collester,* Prosecutor of Passaic County, argued the cause for respondent.

The opinion of the court was delivered by

WACHENFELD, J. The appellant was convicted in the Passaic County Court of murder in the first degree with a recommendation of life imprisonment, from which judgment and sentence he appeals.

The defendant operated a tavern in Paterson and, together with his wife, owned a one-third interest in an inn in Singac. His aunt owned a third interest and the deceased, Alfred Donato, the other third. The inn was operated and managed by Donato and the defendant's wife.

At about six o'clock in the evening of August 13, 1948, the defendant received a telephone call at the tavern from Donato informing him the latter was about to leave the inn because he had been drinking. Donato was prevailed upon to remain on duty until Mrs. DePaola relieved him, which she did soon thereafter.

Donato left the inn but returned later in the evening visibly intoxicated. About midnight, Mrs. DePaola left in her car and was followed by Donato in his. Three customers, one Herbert Walthor, his wife and Lester Taylor, followed in another car and overtook them. After a roadside conversation, all returned to the inn with Walthor driving Mrs. DePaola's car, in which she and Donato were passengers. On arrival, Walthor left them in the car and attempted to disable Donato's automobile by disconnecting the ignition wires. While he was thus engaged, Donato and Mrs. DePaola drove off in her car. The Walthors again attempted to find them but were unsuccessful and returned once more to the inn, where they found the defendant and related to him what had occurred. It was then about one-thirty in the morning of August 14th.

The defendant drove around looking for his wife until about two-thirty when, not having found her, he went to his tavern in Paterson and telephoned his home, receiving no answer. Half an hour later, he called again and this time his wife answered and told him she had closed the inn at two-thirty. He did not return to his house immediately but visited a friend, arriving home about seven in the morning.

The defendant then informed his wife he was going to find Donato to announce he was giving up their interest in the inn and severing all business relations with him. A dispute ensued during which, he says, his wife attempted to stop him by threatening him with a gun and, when he tried to take it away from her, there was a scuffle and the gun was discharged. The State's version of this episode is substantially different. It contends the defendant entered his home with the intention of murdering his wife, after which he planned to kill Donato, and it was in pursuance of this intent that the shots were fired. Mrs. DePaola fled the scene and took refuge with a neighbor who phoned the police.

The defendant went to the Donato house, where he found Mrs. Donato in the kitchen. On inquiry, he was informed her husband was upstairs, whereupon he went to the foot of the stairs with a drawn gun and called to him. The defendant asserts Donato then appeared at the head of the stairway and commenced firing at him and he returned the fire in self-defense. Mrs. Donato, on the contrary, testified he started to climb the stairs gun in hand, with Mrs. Donato hanging on to his arm endeavoring to prevent him from ascending. He continued, however, to the second floor landing and fired three shots at Donato. Mrs. Donato then succeeded in pulling him down the stairs but he again ran up and while doing so fire his gun twice shouting, "I got you. You can't get away." He then said, "I killed him. He couldn't get away any more." Mrs. Donato finally succeeded in her efforts in pushing him out the front door.

The defendant went to his automobile, reloaded his gun and fired at the upstairs windows of the Donato house and

the adjoining half of the duplex where Francisco Donato, brother of the deceased, lived with his wife and her two brothers, Charles and Alfred Romero. He claims this action was prompted by his having been fired upon as he was leaving, though this story is not substantiated by the testimony of witnesses in the neighborhood. The defendant again approached the victim's house and was on the porch when he was overtaken and arrested by a police officer who had arrived on the scene.

After the arrest had been made and the affray had subsided, Alfred and Charles Romero came out on the adjoining porch, the latter carrying a gun which he surrendered. The officer asked Charles to accompany him to the police station but did not insist upon it when informed by the brother that Charles had nothing to do with the shooting.

The defendant was taken to police headquarters and placed in a cell. He was subsequently indicted for murder, after Donato died of the injuries inflicted, and the trial, as already noted, resulted in conviction with a recommendation of life imprisonment, the sentence imposed.

Having concluded, after a careful study, there should be a reversal of the judgment of conviction below for the reasons hereinafter particularly set forth, and being mindful such result will necessitate a new trial, we shall endeavor to meet fully all the matters complained of in an effort to clarify the issues presented as they will, in all probability, again be encountered when the case is retried.

It is urged error was committed in the charge of the court in reference to the distinction between first- and second-degree murder, referring specifically to the portion of the charge which said:

"The distinguishing feature between the two degrees of murder is the intent with which the homicidal act was done. * * * The distinction between the two degrees of murder lies largely in the intent—in first degree murder the intent is to take life and the act must be willful, deliberate and premeditated. In second degree murder there is an attempt to do grievous bodily harm without the intent to take life."

Thus second-degree murder was premised on the absence of an intent to take life and counsel stresses that murder committed intentionally and willfully but without deliberation and premeditation would nevertheless be murder in the second degree. In fact, our courts have so held on innumerable occasions.

In *State v. Mellillo*, 77 *N. J. L.* 505 (*E. & A.* 1908), the court on an assignment challenging the accuracy of the charge that "murder in the second degree is devoid of the element of the intention to kill" admitted the statement was incorrect, and this was followed in *State v. Mosley*, 102 *N. J. L.* 94 (*E. & A.* 1925), where the charge on second-degree murder was likewise criticized and held erroneous because it stressed the distinguishing feature between the degrees of murder to be the intent with which the homicidal act was done.

Similar criticism was made of the charge in *State v. Noel*, 102 *N. J. L.* 659 (*E. & A.* 1926), and also in *State v. Martin*, 102 *N. J. L.* 388 (*E. & A.* 1926), but in each of these cases, the defendant having been convicted of murder in the first degree, it was held the failure to correctly charge second-degree murder was harmless error.

The principle there determined is now deeply imbedded in our fundamental law and has been consistently followed in many cases. We are not inclined to overrule these decisions. However, our adherence to the law as already adjudicated does not justify a trial court in repeating to a jury a charge which has on numerous occasions been declared unsound by our court of last resort in the respect complained of.

It is next asserted there was error in the refusal to charge as requested that "reasonable doubt may be engendered by lack of evidence. If the State failed to produce evidence sufficient to satisfy you of the guilt of the defendant beyond a reasonable doubt, he is entitled to an acquittal even though that doubt may be engendered merely by lack of production of evidence by the State"—constituting the defendant's eleventh request to charge.

*State v. Andrews,* 77 *N. J. L.* 108 ·(*Sup. Ct.* 1908), is cited to sustain this theory. There the Supreme Court reversed a conviction below because of the qualification of a request to charge made by the court, holding: "Under these circumstances the instruction that a reasonable doubt must be one founded upon some evidence that was presented in the case was erroneous, as it excluded all reasonable doubt that may have arisen from the lack or want of evidence."

█ The court need not charge in the exact language requested provided the subject matter of the request has been fully covered, nor has the defendant the right to choose the language in which the court should state the pertinent instructions he is entitled to. *State v. Tansimore,* 3 *N. J.* 516 (1950); *State v. Bunk,* 4 *N. J.* 461.

Admittedly the court charged the defendant was presumed to be innocent and that this presumption continued until the State established his guilt beyond a reasonable doubt; likewise that the State had the burden of proving beyond such doubt every material element of the crime; but, when reference was made to the reasonable doubt so created, the court specifically said "upon such proof," referring, of course, to the evidence submitted. Nowhere in the charge does it appear that such reasonable doubt might possibly have sprung from the fact that there was a lack or want of proof or evidence.

In the *Andrews case, supra,* the court said:

"A doubt, to be reasonable, must arise out of the evidence, or want of evidence, after a full consideration by the jury of all the evidence in the case."

█ Reasonable doubt could arise from the want of evidence or lack of proof but the jury was not so advised. The refusal to charge as requested, we think, was reversible error.

The defendant took the stand in his own behalf and on cross-examination admitted he had been convicted of crime. He was then asked if he had not on various occasions made out application for liquor licenses under oath wherein he had given a false answer to the question whether he had ever been

convicted of crime. This series of questions was strenuously objected to but the State was permitted to show and the witness was compelled to answer that this false swearing occurred in each year from 1941 to 1948.

Following this line of attack, the prosecutor in the summation to the jury placed considerable emphasis upon these incidents, pointing out that the false swearing had occurred not once but upon eight different occasions over a period of eight years, commenting that if he lied then he was lying now and the jury could not believe him.

Counsel for the defendant again sought to protect his client by exhausting the legal remedies in this regard objecting to the comment, requesting the court to direct the jury to disregard the prosecutor's remark and to admonish him to refrain from making any further reference thereto, all of which relief was refused by the court.

The acts thus referred to admittedly had nothing whatsoever to do with the charge upon which the defendant was being tried and were unrelated to it in point of time and fact. The defendant had not been convicted for perjury or false swearing by reason of his misconduct in this respect.

There is also a complaint that the liquor license applications containing the false swearing were put into evidence but the record does not support this claim; they were marked for identification only.

It is charged that the examination conducted by the prosecutor constituted error since it was an attempt to show the commission of criminal acts by the defendant for which he had not been convicted and which were not connected in any way with the indictment for murder on which he was being tried and the evidence did not fall within the line of cases permitting testimony to show malice or ill will on the part of the accused against the victim or to prove some particular element of the crime.

The State, on the contrary, contends the matter was within the discretion of the trial court and the testimony objected to was permissible to show lack of veracity on the part of the

defendant. We can see little merit to the State's theory nor is there authority cited to support it.

In *Roop v. State,* 58 *N. J. L.* 479 (*Sup. Ct.* 1896), the defendant, having testified in his own behalf, was asked on cross-examination if he had not been indicted for keeping a disorderly house. The court, reversing the conviction, ruled:

"The witness had previously been asked if he had been convicted of keeping a disorderly house in another state, and had answered in the affirmative. This question and answer were admissible by force of the provisions of section 1 of the Evidence act (*Gen Stat., p.* 1397), and the answer could be used to affect the credit of the witness. But evidence of the commission of such a crime could not be admitted as tending to establish accused's commission of the crime charged in the indictment on trial. *State v. Raymond,* 24 *Vroom* 260; *Clark v. State,* 18 *Id.* 556.

"The question admitted against objection was plainly improper. It called for a response as to a mere charge of crime, in respect to which there was a presumption of innocence, while proof of the actual commission of such a crime was inadmissible."

In *Bullock v. State,* 65 *N. J. L.* 557 (*E. & A.* 1900), the court, referring to the admission of testimony relating to a similar situation, determined:

"It was clearly incompetent. On the trial of an accused for a crime it is not competent to prove that he committed other crimes of a like nature for the purpose of showing that the accused would be likely to commit the crime charged in the indictment. *Clark v. State,* 18 *Vroom* 556; *Leonard v. State,* 31 *Id.* 8; *State v. Raymond,* 24 *Id.* 260, 265; *Meyer v. State,* 30 *Id.* 310; *Parks v. State,* 30 *Id.* 573; *Ryan v. State,* 31 *Id.* 552, 556; *State v. Sprague,* 35 *Vroom* 419. There is a class of cases in which the knowledge, good faith, motive or intent of a party is material, on which evidence collateral to the main subject is sometimes admitted; but the competency of such evidence is limited to facts which are so connected with the subject in controversy as to make it apparent that the party had a common purpose in both transactions. 1 *Tayl. Ev., Secs.* 327, 338, 348; 11 *Am. & Eng. Encycl. L.* (2d ed.) 510, 514 and cases cited in the notes; *Jordan v. Osgood,* 109 *Mass.* 457, 463; *Cary v. Hotailing,* 1 *Hill* 311, 316; *People v. Dimick,* 107 *N. Y.* 13, 32; *King v. Ellis,* 6 *Barn. & C.* 145. But on the trial of a criminal charge it is not relevant to show that the defendant has committed other similar crimes which are not connected in any way with the one in question. 11 *Am. & Eng. Encycl. L., (2d ed.)* 513;

*Boyd v. United States,* 142 *U. S.* 450; *Commonwealth v. Jackson,* 132 *Mass.* 16; *People v. Gibbs,* 93 *N. Y.* 470, 473."

In *State v. Hendrick and Stanton,* 70 *N. J. L.* 41 (*Sup. Ct.* 1903), the court said:

"A witness may be discredited by evidence attacking his character for truth and veracity, but not by the proof of particular independent facts, though bearing upon the question of veracity. · *Whart. Cr. Ev.* 486; 1 *Greenl. Evid.* 461. Was the evidence admissible against her, as one of the defendants on trial who had testified in her own behalf? The rule is, in general, that a party, when he becomes a witness, is subject to the usual duties, liabilities and limitations of witnesses. *Whart. Cr. Ev.* 429. And the rule which excludes the proof of independent facts to discredit a witness, before alluded to, applies with equal force here. The general rule is that upon the trial of a person for one crime, evidence that he has been guilty of other crimes is irrelevant. *State v. Raymond,* 24 *Vroom* 260, 264; *Whart. Cr. Ev.* 30. Nor is it competent to admit such proof for the purpose of showing that the accused would be likely to commit the crime charged in the indictment. *Bullock v. State,* 36 *Vroom* 557, 574, and cases cited."

This court enunciated the same doctrine in *State v. Donohue,* 2 *N. J.* 381 (1949):

"True, the prosecution is not entitled to introduce evidence of the commission by an accused of other similar offenses in order to show he committed the offense for which he is being tried. *State v. Raymond,* 53 *N. J. L.* 260 (*Sup. Ct.* 1891) ; *Bullock v. State,* 65 *N. J. L.* 557 (*E. & A.* 1900)."

The testimony objected to here did not show malice or ill will on the part of the accused toward the victim and there was no material connection between the alleged wrongdoing and the charge for which the defendant was being tried. *State v. Lederman,* 112 *N. J. L.* 366 (*E. & A.* 1934). Nor does it come within the rule of *State v. Noel, supra.* Where there is a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other, evidence thereof is admissible, and such evidence does not fall under the condemnation of testimony relative to other offenses than the one for which the defendant is on trial.

Here the matters inquired of by the prosecutor on cross-examination related to a criminal act for which the defendant had never been convicted and which were not connected or related in any way to the charge upon which he was presently on trial. The admission of such testimony was reversible error.

The defendant testified that early in the morning of August 14th he went to his home where an argument ensued with his wife. He informed her he was about to go to Donato's to talk to him, when the wife stepped in his way with a gun in her hand. When he tried to wrest the gun from her it was fired.

On cross-examination, the prosecutor, attempting apparently to imply the facts were otherwise and to discredit the defendant, referred to this incident and asked: "As a matter of fact, Mr. DePaola, your wife swore out a complaint against you for assault with intent to kill, did she not?" After a proper objection had been made and overruled, the witness answered: "Afterwards I found that out, yes."

It is not contended that if proper proof had been offered of an assault or an attempt to kill the wife it might not have been admissible as being part of a scheme or plan to take the lives of both, but it is objected to as hearsay in its most elementary form. At best, the accusation made was merely an unproven charge against the defendant which did not logically or legally prove either his guilt or the facts therein contained.

Hearsay denotes that kind of evidence which does not derive its value solely from the credit to be given to the witness himself but rests also in part on the veracity and competency of other persons and such evidence, which is not admissible in chief, may not be elicited by cross-examination. Hearsay testimony is not tolerated in our system of jurisprudence unless it comes within the well-known exceptions to the general rule, which is not an issue here.

The complaint by the wife against the defendant for assault with intent to kill could not be proven in the State's main case nor was the question eliciting such a fact admissible on the cross-examination of the defendant. It was palpably

hearsay and therefore prejudicial and obviously harmful. *State v. Sorge*, 123 *N. J. L.* 532 (*Sup. Ct.* 1940); affirmed, 125 *N. J. L.* 445 (*E. & A.* 1940).

The defendant contends the trial court erred in permitting evidence concerning the shooting which took place at the DePaola home. A detective of the Paterson Police Department was permitted to testify that on August 14th at about seven-forty-five in the morning he received a report of a shooting which had occurred at the DePaolas' residence and that, accompanied by another detective, he went there and found and spoke with Mrs. DePaola. As a result of statements made to them by Mrs. DePaola, they put out a radio alarm and broadcast a teletype to have the defendant's automobile picked up. They also entered the defendant's house and observed some bullet holes, including one in the ceiling, which were photographed. The photographs were put in evidence as State exhibits at the trial.

The defendant complains of the admission of this testimony apparently on the ground that it was hearsay and was in effect permitting the wife to testify against her husband, thus accomplishing by indirection what could not be done directly. No objection was made at the trial but the defendant urges this court to take the point raised under consideration under *Rule* 1:2–19(a), as amended, on the ground that the evidence was so prejudicial as to be properly the subject of appeal.

██ ██ Deciding the issue on its merits, without determining the effect of the failure to make an objection, the testimony is objectionable only in so far as it relates to the instructions received by the officers in which the difficulty they were to investigate was classified as "a shooting." This was not harmful, however, as the defendant himself testified to a scuffle with his wife which resulted in a gun being fired. The testimony of the officers concerning the visit to the house and what they actually found there was proper.

Error is cited in that the officer who made the arrest was permitted to testify that Alfred Romero told him at the time

of the arrest that his brother, Charles Romero, "had nothing to do with the shooting." This, it is urged, allowed the prosecution to establish a disputed fact by hearsay evidence. The State suggests the testimony was admissible as part of the *res gestæ* and as an admission against interest in that the defendant was present and remained silent.

■ To be admissible as part of the *res gestæ* the statement must have been made spontaneously under conditions such as to preclude calm reflection and eliminate any opportunity for composing a self-serving declaration. The rule was stated in *Blackman v. West Jersey & Seashore R. R. Co.,* 68 N. J. L. 1 (*Sup. Ct.* 1902), in these words:

"The rule, with relation to the admission of declarations upon this ground, is that where the declaration is concomitant with the main fact under consideration and is so connected with it as to illustrate its character, it may be proved as a part of the *res gestæ;* but where it is merely narrative of a past occurrence it cannot be received as proof of the character of that occurrence."

In *Perry v. Haritos,* 100 Conn. 476, 124 A. 44 (1924), the court made this observation:

"When the declaration follows some startling occurrence, and is made with reference to it by one having an opportunity to observe the matter of which he speaks, and in such close connection to the event and under such circumstances as to negative the opportunity for deliberation and fabrication, and to indicate that it was a spontaneous utterance growing out of the nervous excitement and mental and physical condition of the declarant it is reasonably probable that it is trustworthy. The spontaneity of the utterance is the guaranty of its trustworthiness."

■ The statement complained of here was made after the police officer had quelled the affray and arrested the defendant. Only then did the Romeros come out of their house. The time elapsed provided ample opportunity to concoct a favorable story, had such been the intent, and the statement made under these circumstances is not admissible as part of the *res gestæ.*

■ Likewise, the defendant's silence cannot be construed as an admission against interest. The applicable rule is stated in *Donnelly v. State,* 26 N. J. L. 601 (*E. & A.* 1857):

> "When a matter is stated in the hearing of one, which injuriously affects his rights, and he understands it, and assents to it, wholly or in part, by a reply, both are admissible in evidence; the answer, because it is the act of the party, who is presumed to have acted under the force of truth, and the statement as giving point and meaning to the action. So, also, silence, unless it be accounted for by some of the circumstances which have been specified, or by other sufficient reasons, may be taken as a tacit admission of the fact stated; because a person knowing the truth or falsity of a statement affecting his rights, made by another in his presence, under circumstances calling for a reply, will naturally deny it, if he be at liberty so to do, if he does not intend to admit it."

We cannot perceive how the statement made by Romero testified to by the officer could injuriously affect the defendant's rights. Moreover, it does not appear that he was in a position to know the truth or falsity of it since there is no claim that he knew the identity of the person who allegedly fired at him from an upstairs window. While the statement was made in his presence, it cannot be assumed he heard or understood it.

 The evidence dealt with a statement made by a third person concerning the actions of still another and in nowise related to the words, actions or omissions of the defendant. While it should actually have been excluded as irrelevant and hearsay if timely and proper objection was made, it related to an affray which admittedly commenced after the fatal shots had been fired and the defendant had left Donato's home and therefore was not prejudicial to him.

 It is next urged the court below erred in permitting two of the State's witnesses, Walthor and Taylor, to testify concerning the events of the evening of August 13th which occurred at and near the Colonial Inn and in the absence of the defendant. It is predicated upon the assertion that the defendant did not have full knowledge of the events and they could not, therefore, have influenced his state of mind nor supplied a motive for his actions the following morning.

The court is asked to find reversible error in this respect even though no objection to the testimony was made at the

trial, again citing *Rule* 1:2–19(a), as amended November 10, 1949, which reads in part:

"* * * The court may, however, notice plain errors affecting substantial rights of the defendant, although they were not brought to the attention of the trial court."

The applicability of the rule need not now be determined as a factual analysis is dispositive of the issue raised. Walthor, after testifying at length about the occurrences of the evening, stated he had informed the defendant of all of them the same night. Taylor's testimony related to the same events except for a brief mention of things which had taken place in the defendant's presence at his tavern in Paterson, and of which the latter, therefore, had personal knowledge.

Later, when the defendant took the stand, he did not refute Walthor's testimony or deny that he had been fully informed of the events of the evening preceding the shooting. On the facts, we find no merit in the argument advanced.

On cross-examination the prosecutor asked and the defendant was compelled to admit he had been convicted of the crime of breaking and entering on January 31, 1919, at which time he admittedly was a juvenile, having been born August 4, 1903.

Two statutes bear upon this situation. *Chapter* 219, *P. L.* 1903, as amended by *Chapter* 236, *P. L.* 1908, 2 *Compiled Statutes* 1910, *Criminal Procedure,* § 207, provided in part:

"But neither the record of the conviction of juvenile offenders contained therein nor the fact of such conviction shall be admissible in evidence or in any way shown in any action or proceeding of a civil or criminal nature."

*Chapter* 86 of the *Laws of* 1918, 1 *Compiled Statutes,* 1924 *Supp.,* § 53-49a, provided that:

"Whenever any person under the age of sixteen years shall be jointly indicted with a person over sixteen years of age and convicted of any crime * * * judgment as to the person under sixteen years of age shall be entered by the court in which such person is tried

and convicted in form that he is a juvenile delinquent only, and it shall not state the specific crime of which he is convicted; * * * nor shall such judgment operate as a conviction of crime or be provable as such."

These two statutes were in effect in 1919 at the time the defendant was adjudged a juvenile delinquent and they specifically prohibited what was done here. That it is still the legislative policy of the State to declare such an adjudication not a conviction of crime such as may be shown to attack the credibility of a witness under *R. S.* 2 :97–13 is evidenced by the provisions of our present Juvenile and Domestic Relations Court Law, *Chapter* 157, *Laws of* 1929, as amended, *R. S.* 9 :18–1 to 37. This statute defines juvenile delinquency as the commission by a child under sixteen years of age of certain acts and provides, *R. S.* 9 :18–32 :

"No adjudication upon the status of a child shall operate to impose any of the civil disabilities ordinarily imposed by conviction, nor shall a child be deemed a criminal by reason of such adjudication, nor shall such adjudication be deemed a conviction."

The State concedes it may have been error for the court to have overruled the objection to the offered testimony but asserts it was harmless error. We cannot agree with such reasoning and think it was plainly prejudicial and amounted to harmful error requiring a reversal.

The next assignment of error is the refusal of the trial court to permit the introduction in evidence of the statement made by the defendant at the Little Falls Police Station, after having allowed the prosecutor to use excerpts therefrom on cross-examination.

While at the police station, the defendant refused to give a voluntary statement "because I want counsel before I can give any statement out." He nevertheless answered several questions which were propounded to him by the police and the detectives present. On cross-examination the prosecutor questioned him on certain admissions which he had made during that interview, following which defense counsel offered

the transcript of the entire interview in evidence. The trial court refused to admit it.

■ It is the general rule that whenever the statement of a party is put in evidence, all that was said by him at the time and relating to the same subject matter is admissible. *State v. Cohen*, 97 *N. J. L.* 5 (*Sup. Ct.* 1922). This rule is, however, subject to the limitation set forth in *State v. Then*, 118 *N. J. L.* 31 (*Sup. Ct.* 1937); affirmed, 119 *N. J. L.* 429 (*E. & A.* 1938), wherein the court said:

"It is true, of course, that when the statement of a party is put in evidence, everything said on the same subject-matter is admissible. * * * But we think there should have been a limitation to this rule, in that the proof should be confined to those matters only which are the subject-matter of inquiry or investigation."

■ The defense counsel in the present case was given a copy of the transcript of the entire statement made at the police station. Had he desired to do so on redirect examination of the defendant, he could have examined him on any matter contained therein and proven all or any of which was pertinent to or would have assisted in explaining the admissions brought out by the prosecutor on cross-examination. The typewritten statement, however, was not admissible in evidence and there was no error in the court's ruling in this regard.

Lastly it is contended there was error in permitting the prosecutor to comment in summation on the fact that the defendant did not call his wife as a witness to refute the accusation he had shot at her. The prosecutor commented upon the incident admitted by the appellant on cross-examination that the wife made a complaint against him for assault with intent to kill.

Having determined this testimony should not have been permitted and that the admission thereof was reversible error, we assume this difficulty will not again be encountered on the retrial of this case.

As to the right of the prosecutor to comment generally upon the fact that the defendant did not produce his wife as a

witness, which he stressed several times, according to the record, in his summation, *R. S.* 2:97–4 provides that no husband or wife shall be competent to give evidence against the other in any criminal action or proceeding except as therein provided, and *R. S.* 2:97–9 provides no husband or wife shall be compelled to give evidence against the other in any criminal action or proceeding except to prove the fact of marriage.

There is no legal bar or restriction which prevents the wife from voluntarily testifying for her husband if she is called as a witness on his behalf. The general rule is that, she being a competent witness for him but not for the prosecution, it is proper for the State to comment on the defendant's failure to produce her as a witness if she possessed knowledge of pertinent facts. This is not the rule, however, where the facts and circumstances suggest great hostility toward him and the likelihood that she would testify not for but against him. Such hostility on her part is indicated here and he was not obliged to present her testimony nor was the prosecutor justified, after explaining her legal disqualification as a witness for the State, in commenting upon his failure to do so. These comments being unwarranted, under the circumstances, the refusal of the court to instruct the jury to disregard them was error.

The judgment of conviction is reversed and a trial *de novo* ordered.

*For reversal*—Chief Justice VANDERBILT, and Justices CASE, HEHER, OLIPHANT, WACHENFELD and BURLING—6.

*For affirmance*—None.