CHIEF JUSTICE RABNER,
concurring.
In this case, defense counsel sought to call defendant’s mother as a witness to exonerate the defendant. The State, in turn, wanted to cross-examine her about two prior occasions when she allegedly falsely tried to exonerate him. As the majority’s well-reasoned opinion explains, the current rules of evidence do not allow that inquiry. I write separately to discuss whether the rules should be modified to permit cross-examination about specific instances of conduct that relate to a witness’s character for truthfulness.
Under the existing rules, a witness may not be cross-examined about specific instances of conduct except for two limited areas: prior criminal convictions and prior false criminal accusations. See N.J.R.E. 405, 607, 608.
Rule 405 permits character evidence but bars the admission of “[sjpecific instances of conduct not the subject of a conviction of a crime.” Rule 608(a) likewise permits evidence “in the form of opinion or reputation” about a “witness’s character for truthful *487 ness or untruthfulness.” The rule, however, forbids the use of “specific instances of conduct” to prove a trait of character, aside from impeachment based on a criminal conviction under Rule 609. Rule 608(b) provides another narrow exception and allows
[t]he credibility of a witness in a criminal case [to] be attacked by evidence that the witness made a prior false accusation against any person of a crime similar to the crime with which defendant is charged if the judge preliminarily determines, by a hearing pursuant to Rule 104(a), that the witness knowingly made the prior false accusation.
Finally, Rule 607 notes that the examination of a witness’s credibility is subject to the restrictions in Rules 405 and 608.
As a result, in most instances, a witness with a record of demonstrable lies that bear on credibility cannot be asked about them on cross-examination. She is instead allowed to appear before the jury under an artificial light.
I.
It is important to consider the context and purpose underlying today’s rules. In State v. Guenther, 181 N.J. 129, 141-42, 854 A.2d 308 (2004), this Court traced the history of Rule 608 to the common law and noted certain reasons for the rule: “to prevent unfairness to the witness,” “to avoid confusion of the issues before the jury,” and to avoid “undue consumption of time.” (citing 3A Wigmore on Evidence § 979, at 823, 827 (Chadbourn rev. 1970)).
Guenther described the reasons against using extrinsic evidence to prove specific acts of misconduct. The common law recognized that each additional witness would extend the trial, could “overwhelm the material issues of the case” with testimony on minor points, and could “confuse the tribunal in its effort! ]” to focus on material points. 3A Wigmore on Evidence § 979, at 826. In addition, it would be unfair to allow others to refute the testimony of a witness, for whom “it would be practically impossible” to call competent witnesses to dispute the allegation. Ibid.
To be sure, though, the reasons against allowing extrinsic evidence to challenge a witness’s testimony had little to do with *488 relevancy. Id. at 827. “The reasons are solely of auxiliary policy,” Professor Wigmore noted, and “[w]hen these reasons ... cease, the rule ceases.” Ibid. He offered two such examples: “proof of a particular crime by record of conviction, and proof of particular instances of misconduct in general, by cross-examination of the witness himself.” Id. at 827-28 (emphases altered).
N.J.R.E. 608, however, bars not only the use of extrinsic evidence but also cross-examination into specific instances of misconduct. The common law offers no support for the latter principle. To the contrary, as Professor Wigmore explained, the reasons underlying the bar against extrinsic evidence
appear plainly to have no effect in forbidding the extraction of the facts of misconduct from the witness himself upon cross-examination, (a) There is no danger of confusion of issues, because the matter stops with question and answer; (b) There is no danger of unfair surprise, because the impeached witness is not obliged to be ready with other witnesses to answer the extrinsic testimony of the opponent, for there is none to be answered, and because, so far as the witness himself is concerned, he may not unfairly be expected to be ready to know and to answer as to his own deeds.
[Id. § 981, at 838.]
Professor McCormick likewise noted that the English common law tradition “permit[ted] counsel to broadly inquire about the witness’s associations and personal history including any misconduct tending to discredit his character, even though it has not been the subject of a conviction. In the common law tradition the English courts trusted the bar’s disciplined discretion to avoid abuse.” 1 McCormick on Evidence § 41, at 246-47 (Broun ed., 7th ed. 2013).
For centuries, thus, authorities have recognized a clear distinction between (1) using extrinsic evidence to discredit a witness— namely, calling additional witnesses to impeach the witness— which can be unfair and invite confusion and delay, and (2) asking the witness questions on cross-examination that relate to the person’s character for truthfulness. The former was barred for good reason. Courts historically allowed the latter approach.
*489 II.
Most modern courts follow the common law tradition and permit questioning about specific instances of conduct that are probative of a witness’s character for truthfulness. In federal court, that type of cross-examination is expressly allowed and occurs regularly. Like New Jersey’s rule, Federal Rule of Evidence 608(a) permits reputation or opinion evidence to challenge a witness’s character for truthfulness or untruthfulness. Rule 608(b) addresses the use of specific instances of conduct:
Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of: (1) the witness; or (2) another witness whose character the witness being cross-examined has testified about.
[Fed. R. Evid. 608(b) (emphasis added).]
A majority of states follow the federal approach and permit cross-examination into specific instances of conduct if they are probative of the witness’s character for truthfulness. Eight states follow the federal rule verbatim: Arizona, Ariz. R. Evid. 608(b); Iowa, Iowa R. Evid. 5.608(b); Mississippi, Miss. R. Evid. 608(b); New Mexico, N.M. R. Evid. 11-608(B); North Dakota, N.D. R. Evid. 608(b); South Dakota, S.D. Codified Laws § 19-19-608(b); Utah, Utah R. Evid. 608(b); and West Virginia, W. Va. R. Evid. 608(b). Maine uses nearly identical language. Me. R. Evid. 608(b). Connecticut also follows the federal approach. Conn. Code Evid. 6—6(b).
Many states adopted the version of Rule 608 in the Uniform Rules of Evideyice, which tracks the essence of the federal rule with slightly different language:
Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness’s credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. However, in the discretion of the court, if probative of truthfulness or untruthfulness, they may be inquired into on cross-examination of the witness (i) concerning the witness's character for truthfulness or untruthfulness, or (ii) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.
*490 [Unif. R. Evid. § 608(b) (Nat’l Conf. of Comm’rs on Unif. State Laws 2005).]
Twenty states use either that precise text or substantially similar language: Arkansas, Ark. R. Evid. 608(b); Colorado, Colo. R. Evid. 608(b); Delaware, Del. R. Evid. 608(b); Georgia, Ga. Code Ann. § 24-6-608(b); Idaho, Idaho R. Evid. 608(b); Kentucky, Ky. R. Evid. 608(b); Michigan, Mich. R. Evid. 608(b); Montana, Mont. Code Ann. § 26-10-608(b); Nebraska, Neb. Rev. Stat. § 27-608(2); Nevada, Nev. Rev. Stat. § 50.085(3); New Hampshire, N.H. R. Evid. 608(b); North Carolina, N.C. Gen. Stat. § 8C-1, Rule 608(b); Ohio, Ohio R. Evid. 608(B); Oklahoma, Okla. Stat. tit. 12, § 2608(B); Rhode Island, R.I. R. Evid. 608(b); South Carolina, S.C. R. Evid. 608(b); Vermont, Vt. R. Evid. 608(b); Washington, Wash. R. Evid 608(b); Wisconsin, Wis. Stat. § 906.08(2); and Wyoming, Wyo. R. Evid. 608(b).
Minnesota and Tennessee use the language of Unif. R. Evid. 608(b) and add procedural protections. See Minn. R. Evid. 608(b), (c); Tenn. R. Evid. 608(b). Maryland also allows cross-examination about a witness’s prior conduct that is probative of untruthfulness, when the questioner, if challenged, “establishes a reasonable factual basis” outside the jury’s presence. Md. R. 5-608(b).
Hawaii permits cross-examination about specific instances of a witness’s conduct, if probative of untruthfulness, and affords judges discretion to allow the use of extrinsic evidence. Haw. Rev. Stat. § 626-608(b).
Kansas allows any party to “introduce extrinsic evidence concerning any conduct by [the witness] and any other matter relevant upon the issues of credibility.” Kan. Stat. Ann. § 60-420.
California permits evidence of specific instances of conduct to challenge a witness’s credibility in criminal but not civil cases. See Cal. Const. art. I, § 28; Cal. Evid. Code § 787; People v. Harris, 47 Cal.3d 1047, 255 Cal.Rptr. 352, 767 P.2d 619, 640-41 (1989).
Six states adopted only the latter part of Federal Rule of Evidence 608(b). They permit cross-examination of a character witness with specific instances of conduct about the character for *491 truthfulness or untruthfulness of the underlying witness. See Ala. R. Evid. 608(b); Alaska R. Evid. 608(b); Ind. R. Evid. 608(b); La. Code Evid. art. 608(B); Pa. R. Evid. 608(b); Va. Sup. Ct. R. 2:608. Except to prove a criminal conviction, extrinsic evidence may not be used, and the states do not allow inquiry into specific instances of conduct of the testifying witness himself.
Only a few states reject the federal approach entirely and do not permit evidence of specific acts of conduct to attack or support a witness’s credibility. See Mass. Guide Evid. 608(b); Or. Rev. Stat. § 40.350(2); Tex. R. Evid. 608(b).
New Jersey has followed the minority rule for quite some time. N.J.R.E. 608 was adopted in 1992. It incorporated the same limitation against the use of specific instances of conduct that appeared in the prior Rule 22(d). Supreme Court Committee Comment on N.J.R.E. 608 (1991), reprinted in Biunno, Weissbard, & Zegas, New Jersey Rules of Evidence (Biunno) 612 (2016). The Supreme Court adopted Rule 22 in 1967. Supreme Court Adopts Evidence Rules, 90 N.J.L.J. 393 (June 15, 1967). The rule followed settled New Jersey law. See, e.g., State v. De Paola, 5 N.J. 1, 9-11, 73 A.2d 564 (1950).
When New Jersey restyled its rules of evidence in 1992 to follow the format of the federal rules, no substantive change was made in this area. In general, as the Committee on Evidence observed, “[t]he overall effect” of the changes was “neither startling nor radical and [did] not substantially alter prevailing practice.” Report of the Supreme Court Committee on the Rules of Evidence (1991), reprinted in Biunno, supra, at x. As to Rule 608, there is no record of the reason the minority rule was maintained, other than the following brief statement: “[The] rule is consistent in philosophy and effect with the choice made in respect of Rule 405(a), namely adopting the state rather than the federal analogue. It is the Committee’s view that Rule 607 affords sufficient scope for the effective impeachment of credibility.” Supreme Court Committee Comment on N.J.R.E. 608 (1991), reprinted in Biunno, supra, at 612.
*492 III.
The differences under the two primary approaches matter a great deal. Under the majority rule, a witness can be questioned about specific conduct that generally involves dishonesty or false statements; in New Jersey, witnesses are shielded from that type of inquiry. For example, in federal court and in most states, a witness can be asked if he or she previously lied under oath, see United States v. Whitmore, 359 F.3d 609, 619-20 (D.C. Cir. 2004), used false social security numbers, see United States v. Weekes, 611 F.3d 68, 71 (1st Cir. 2010), cert. denied, 546 U.S. 1021, 131 S.Ct. 3021, 180 L.Ed.2d 850 (2011), made a false statement about marital status to get a marriage license, see United States v. Beros, 833 F.2d 455, 463 (3d Cir. 1987), criticized on other grounds, Schad v. Arizona, 501 U.S. 624, 634 n.5, 111 S.Ct. 2491, 2498 n.5, 115 L.Ed.2d 555, 567 n.5 (1991), or altered time records and inflated bills to clients, see United States v. Simonelli, 237 F.3d 19, 22-23 (1st Cir.), cert. denied, 534 U.S. 821, 122 S.Ct. 54, 151 L.Ed.2d 23 (2001). Focused cross-examination into that type of conduct relates to the witness’s veracity and credibility, and is considered neither unfair nor confusing.
In New Jersey, by contrast, a witness who previously lied under oath can testify again without facing any questions about the matter—absent two exceptions—even though the information is plainly pertinent to the jury’s ability to evaluate the witness’s credibility. The current rules prevent jurors from hearing anything about a prior specific instance of conduct that bears directly on credibility, aside from the minor exceptions noted above.
This appeal highlights problems posed by the current law. A witness’s prior dishonest acts and false statements, which relate to the person’s character for truthfulness, cannot be probed for the jury, with rare exception. If a witness has falsely accused someone of a crime, though, the witness may be cross-examined on that topic in certain situations. See N.J.R.E. 608(b). That limited exception makes eminently good sense and serves one of the core principles of the justice system: to seek the truth by confronting *493 and possibly exposing a witness who may lack credibility. However, if another witness has falsely tried to exonerate a person, the witness cannot be questioned on that specific instance of conduct.
False testimony to exonerate is just as troublesome as a false criminal accusation. Both impede the search for the truth. Indeed, it is hard to explain to the public why one area can be probed and not the other.
In both instances, Rule 403 would bar testimony that would confuse the issues, distract the jury with an extended sideshow, or cause undue prejudice. Trial judges ably guard against those concerns now when they decide whether to allow cross-examination about prior false accusations. Just the same, I trust the discretion of trial judges to limit carefully cross-examination about prior false efforts to exonerate and other specific instances of conduct that relate to credibility.
Had the federal or uniform rule applied in this case, we do not know from the record whether the State would have been allowed to ask defendant’s mother whether she lied twice before to protect her son. The State would need a good faith basis for that line of questioning and would have to satisfy any concerns under Rule 403. The trial judge, in turn, would have been required to limit the testimony in order not to reveal any prior criminal activity that would unduly prejudice defendant.
That said, if there is a legitimate basis for the question, what is wrong with asking a witness whether she had lied before to protect her son about a serious matter? Why should the rules prevent a jury from hearing that question and answer, and having a chance to evaluate the witness’s demeanor? The question alone is not evidence, but the answer—even a denial—can convey pertinent information to a jury.
In most jurisdictions, the inquiry would end at that point. Counsel is bound by the witness’s answer and cannot offer extrinsic evidence. In other words, counsel cannot call another witness to disprove the answer and show that the specific incident oc *494 curred. Jack B. Weinstein & Margaret A. Berger, Weinstein’s Federal Evidence § 608.22 (Matthew Bender 2017). That guards against delay and confusion.
It is hardly unfair to ask a witness about his or her own behavior. But it does seem unfair to keep factfinders in the dark about discrete instances of conduct that relate to a witness’s character for truthfulness. The justice system’s focus belongs on enabling juries to decide whether a witness can be believed, not on how attorneys may prepare for cross-examination. Asking witnesses to respond directly to pertinent questions serves that aim. Character evidence from a third party, by comparison, is a weak substitute to assess the witness’s own response.
I believe it is time to consider whether Rule 608 should be revised to allow cross-examination, in a controlled fashion, into specific instances of conduct that are probative of the witness’s character for truthfulness. Without question, that would amount to a substantial change in practice. But the Judiciary has not shied away from reassessing its approach when there is cause to do so. See, e.g., State v. Witt, 223 N.J. 409, 126 A.3d 850 (2015).
Thoughtful judges, practitioners, and academics can evaluate the current state of the law and consider appropriate safeguards that might accompany a change. Aside from changes to Rule 608 in 2007 to incorporate Guenther, see R. 608(b); Biunno, supra, comment 2 on N.J.R.E. 608, at 614, it is unclear when the Committee on Evidence last examined the rule in depth. At the very least, it has been decades.
I recommend that the Committee consider the question again today for a simple reason: the topic relates directly to the jury’s search for the truth, which a system of justice should foster.