**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0223-20

GRACE C. AMAECHI,

    Plaintiff-Appellant,

v.

ROSE KAUME,

    Defendant/Third-Party
    Plaintiff-Respondent.

v.

PETER IHEZUE,

    Third-Party Defendant.

_____

        Submitted October 19, 2021 – Decided February 18, 2022

        Before Judges Fisher and DeAlmeida.

        On appeal from the Superior Court of New Jersey, Law Division, Somerset County, Docket No. DC-005043-19.

        Grace C. Amaechi, appellant pro se.

        Green & Green, attorneys for defendant/third-party plaintiff-respondent (Terry P. Green, on the brief).

PER CURIAM

In this landlord-tenant matter, plaintiff Grace C. Amaechi appeals from the September 2, 2020 judgment of the Special Civil Part denying the return of her security deposit and awarding defendant Rose Kaume $11,250 for the cost of repairing damages caused by Amaechi at the rented property. We affirm.

I.

In August 2018, Amaechi rented a house from Kaume. Nine months later, Kaume discovered Amaechi had made an unauthorized alteration to the home by constructing a partition in the family room from dry wall to create an additional "bedroom." This alteration significantly damaged the ceiling, floors, and walls.

Kaume filed a complaint in the Special Civil Part seeking Amaechi's eviction. Pursuant to a consent to enter judgment for possession, Amaechi vacated the home on October 29, 2019.

Once Kaume gained access to the residence, she discovered Amaechi had caused additional damage, including a hole in the ceiling, burns in the backsplash behind the stove, scratches, discoloration and damage to the floors, a broken and overflowing toilet, a punched hole in the wall, and sewage-soaked carpeting. In addition, debris, including a toilet and construction materials, was

2

scattered in the yard and a large dumpster filled with garbage was parked in the driveway. Kaume informed Amaechi that she was retaining her security deposit of $3,750 to pay for repairing the damages.

Amaechi filed a complaint in the Special Civil Part seeking return of her security deposit and reimbursement of $8,444.48 in expenses she alleges she incurred repairing damage to the home from a leak in a toilet. Kaume filed a counterclaim for $15,000 to repair damages she alleged Amaechi caused to the property.[1]

Because of precautions implemented to address the Covid-19 pandemic, the two-day trial of this matter took place over Zoom. Amaechi, Kaume, and the realtor who acted as Kaume's agent when leasing the home testified. The parties introduced numerous exhibits and had the opportunity to cross-examine witnesses. The court admitted several photographs of the home. Some depicted the home in good condition just prior to the start of the lease; others captured damage to the ceiling, floors, toilets, kitchen, and other areas of the house, as well as the debris littering the yard and the loaded dumpster in the driveway.

---

[1] Although Kaume sought more than $15,000, the jurisdictional limit of the Special Civil Part is $15,000 in damages. R. 6:1-2(a)(1).

A-0223-20

In an oral opinion, the trial court found that Amaechi did not prove by a preponderance of the evidence that she paid for necessary repairs to the house during her tenancy for which she was not reimbursed. The court found that to the extent Amaechi established she had paid for repair services, she was compensated for those expenses when she engaged in self-help by reducing her rent in subsequent months.

With respect to Kaume's counterclaim, the court found credible the testimony of the realtor, corroborated by photographs, that the home was in "pristine condition" when it was rented to Amaechi. In addition, the court found credible testimony and photographic evidence that the home suffered substantial damage during Amaechi's tenancy and that Amaechi caused the damages. The court found that Amaechi allowed ten people to live in the home, even though the lease contemplated only Amaechi and her children as tenants. The court also accepted the veracity of the invoices submitted by Kaume establishing "to the penny" the costs she incurred repairing the damage that arose during the tenancy.

The court awarded Kaume $15,000 for the cost of repairs and denied Amaechi's request for the return of her security deposit, which the court used to offset the damage award. The September 2, 2020 judgment awards Kaume a net $11,250, as well as court costs.

4

This appeal follows. Amaechi argues she was denied due process because of "the poor virtual connection through Zoom" during the trial and because she was not advised on how to present evidence. In addition, she argues that the court's findings of fact and conclusions of law are not supported by the evidence and that the court failed to investigate potential fraud in the invoices submitted by Kaume.

II.

"The United States Supreme Court has recognized the due process guarantee expressed in the Fourteenth Amendment to the United States Constitution includes 'the requirement of "fundamental fairness"' in a legal proceeding." In re Adoption of Child ex rel. M.E.B., 444 N.J. Super. 83, 88 (App. Div. 2016). While the New Jersey Constitution "does not expressly refer to the right to due process of law," the Supreme Court "has engrafted these protections upon Article I, Paragraph 1 of the State Constitution, concluding it also 'protect[s] against injustice and, to that extent, protect[s] values like those encompassed by the principle[s] of due process.'" Ibid.

The right to due process entitles a civil litigant to, inter alia, a fair hearing. Ibid. "Fundamentally, due process requires [notice and] an opportunity to be heard at a meaningful time and in a meaningful manner." Doe v. Poritz, 142

5

N.J. 1, 106 (1995). "Additionally, due process protections encompass 'procedural safeguards including the right to cross-examine adverse witnesses and the right to call witnesses.'" M.E.B., 444 N.J. Super. at 88-9. Ultimately, due process is a flexible concept that depends upon the particular facts and circumstances of the case. Doe, 142 N.J. at 106.

Having carefully reviewed the transcript of the trial, as well as the evidence admitted by the court, we find no support for Amaechi's claim to have been denied due process. Amaechi testified, submitted evidence, cross-examined witnesses, and addressed the court without evident difficulty. We see nothing in the record indicating that Amaechi's ability to establish her claims and defend against Kaume's counterclaim was frustrated by the technology through which the trial was held. At no point in the proceedings did Amaechi object to the trial being held by Zoom, or inform the court that she was unable to hear testimony, submit evidence, or otherwise meaningfully participate in the trial.

Amaechi's arguments are, in part, based on her mischaracterization of dashes that appear in the trial transcript. It is evident that the dashes do not represent omitted testimony, but instances of witnesses or the court talking over

A-0223-20

one another or changing the direction of their thoughts mid-sentence.[2]  Nor do we agree with Amaechi's claim that the transcript is littered with "indiscernible" notations that render it invaluable as a record of the proceeding.

With respect to the trial court's substantive decision, our scope of review of the judge's findings in this nonjury trial is limited.  We must defer to the judge's factual determinations, so long as they are supported by substantial credible evidence in the record.  Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 483-84 (1974).  This court's "[a]ppellate review does not consist of weighing evidence anew and making independent factual findings; rather, [this court's] function is to determine whether there is adequate evidence to support the judgment rendered at trial."  Cannuscio v. Claridge Hotel & Casino, 319 N.J. Super. 342, 347 (App. Div. 1999).  However, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference."  Manalapan Realty, L.P. v. Twp. Comm., 140 N.J. 366, 378 (1995).

---

[2] Kaume included in her appendix a letter from the court transcriber explaining the use of dashes in the transcript.  Because Kaume did not move to supplement the record, we do not consider the letter.  Our interpretation of the transcript is based on our experience reviewing trial transcripts.

The record fully supports the trial court's findings of fact, which were based on its credibility determinations and review of the evidence. There is ample support for the trial court's conclusion that Amaechi significantly damaged the house during her tenancy and that Kaume incurred $15,000 in costs to repair the damages. The trial court appropriately applied Amaechi's security deposit to offset Kaume's costs. See N.J.S.A. 46:8-21.1.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0223-20